UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT DAYTON
CASE NO. 3:17-cv-00395

| | |
|---|---|
| **TROY D. COX** : | |
| **3764 Belleau Wood Drive** : | |
| **Lexington, KY 40517** : | |
| : | **Judge Walter H. Rice** |
| **PLAINTIFF,** : | |
| : | **Magistrate Judge Sharon L. Ovington** |
| v. : | |
| : | |
| **UNIVERSITY OF DAYTON** : | |
| **300 College Park** : | **AMENDED COMPLAINT AND JURY** |
| **Dayton, OH 45469** : | **DEMAND** |
| : | |
| **DEFENDANT.** : | |

Plaintiff, Troy D. Cox, for his causes of action against Defendant states as follows:

**NATURE OF ACTION**

1. Plaintiff, Troy Cox, is a qualified individual with a disability eligible for coverage under 29 U.S.C. § 794 (more commonly known as § 504 of the Rehabilitation Act) and the Americans with Disabilities Act (hereinafter "ADA"). The Defendant, University of Dayton, is a private institution of higher learning funded in part by public funds, including federal funds.

**JURISDICTION AND VENUE**

2. This action arises out of both 29 U.S.C. § 794, more commonly known as § 504 of the Rehabilitation Act, and 28 U.S.C. § 12182, more commonly known as the Americans with Disabilities Act.

3. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4. The Court is empowered to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367 on the grounds that they are so related to the federal claims, over which the Court has original jurisdiction, that they form part of the same case or controversy.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343. The Defendant University of Dayton is found within the Southern District of Ohio. Additionally, the acts giving rise to this action occurred within this district. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff, Troy Cox, is a qualified individual with a disability as defined by § 504 of the Rehabilitation Act and the ADA. Plaintiff, who served in the Gulf War, was honorably discharged from United States Navy in 2013.

7. Defendant, University of Dayton ("UD"), is a not for profit corporation organized under the laws of the State of Ohio. Defendant UD is a private postsecondary educational institution which receives public funds. University of Dayton is located in Dayton, Ohio.

8. Defendant receives funding from both state and federal agencies and is required to comply with the statutory schemes of § 504 of the Rehabilitation Act and the ADA.

9. Defendant is required to provide equal access to its curriculum and programs to students with disabilities enrolled in the University.

10. Defendant is required to provide reasonable accommodations to students enrolled in the University to allow the students equal opportunity and enjoyment of the Defendant's programs as any other non-disabled student.

## STATEMENT OF FACTS

11. Plaintiff incorporates Paragraphs 1-10 by reference.

12. Plaintiff, Troy Cox, is a qualified individual with a disability as more particularly described below.

13. Plaintiff applied to the University of Dayton School of Law on February 29, 2016.

14. Plaintiff was accepted and enrolled at University of Dayton, College of Law, for the fall semester of 2016. Classes were to begin on August 29, 2016.

15. Upon enrollment, on or about August 22, 2016, Plaintiff contacted Defendant University of Dayton's Office of Learning Resources/Disability Resources (OLR) for the purpose of obtaining reasonable accommodations for his disabilites. Requests for law student disability accommodations are made to this office.

16. OLR's website indicates: "Disability documentation should be current and relevant but not necessarily 'recent.' Disabilities are typically stable lifelong conditions. Therefore, historic information, supplemented by interview or self-report, is often sufficient to describe how the condition impacts the student at the current time and in the current circumstances."

17. On August 22, 2016, Plaintiff verbally requested an accommodation to assist with his home study, classwork and testing. At that time Plaintiff attempted to explain his medical conditions and resulting limitations as more fully described below.

18. Defendant directed Plaintiff to the University of Dayton website to complete an initial intake form regarding his accommodations.

19. Plaintiff completed the online intake form on August 22, 2016. His request number was A00310-2016. In that form Plaintiff described his disabilities and resulting physical limitations that effected his ability to study, complete assignments and take tests as follows:

    > From previous physical injuries, broken back and broken neck, I am unable to sit sometimes for even short periods. I further suffer from severe and debilitating migraines because of these injuries and several other prior causes. I have an old injury to the neck that causes severe pain and paralysis in half of my neck, face and tongue when it flares. Sitting or reading, such as we do in any classroom, causes my extraordinary pain and discomfort sometimes. I generally do ok, when able to break, stretch, and rest for a few mins during these times when needed.
    >
    > I am a retired military combat veteran and suffer from PTSD and anxiety, at levels that require when needed, that I be allowed to immediately leave and take some private time.

20. In that request form that Plaintiff submitted to Defendant on August 22, 2016, Plaintiff requested the following accommodations:

    > Accommodations received at Eastern Kentucky University, during undergrad, was time and one half for testing, quizes (*sic.*) and exams of any sorts as well as needed time for any assignments delayed/late because of my disabilities.
    >
    > Would like to have dictation software. Medically being evaluated for loss of strength in both hands and weakness/fatigue in both. Unable to write by hand with a pen for more than a few mins at a time. . . .

21. In fact, the medical information that was available to Defendant at that time confirmed that Plaintiff suffered from the following disabling conditions, among other conditions suffered by Plaintiff: neck tongue syndrome with severe incomplete paralysis. with involvement of the v and IX cranial nerves; adjustment disorder with mixed anxiety and depressed mood, lumbar strain spasm, recurrent; degenerative disc and facet disease of the cervical spine; and patellofemoral syndrome, left knee. These injuries and conditions were incurred during Plaintiff's service in the Gulf War or are otherwise service related.

22. These requested accommodations were reasonable and would, in fact, allow Plaintiff to enjoy the same educational benefits with Defendant as enjoyed by non-disabled students by helping him read and comprehend class materials, complete assignments and take tests. Conversely, the Defendant's failure to provide such reasonable accommodations to Plaintiff would discriminate against Plaintiff by denying him the same educational benefits that Defendant offered to non-disabled students by denying him the ability to properly read and comprehend class materials, to study for exams and to take exams.

23. Defendant did not follow up with Plaintiff's online request or otherwise respond to Plaintiff.

24. Having heard nothing from Defendant, around the first week of September 2016, Plaintiff entered Defendant's Office of Learning Resources (the office responsible for disability accommodations for students) to hand-deliver documents to supplement his online request. Those documents confirmed the following disabling conditions, among other conditions suffered by Plaintiff: neck tongue syndrome with severe incomplete paralysis. with involvement of the V and IX cranial nerves; adjustment disorder with mixed anxiety and depressed mood, lumbar strain spasm, recurrent; degenerative disc and facet disease of the cervical spine; and patellofemoral syndrome, left knee. These injuries and conditions were incurred during Plaintiff's service in the Gulf War or are otherwise service related.  These conditions substantially interfere, for extended periods of time, with or prevent him from performing the following major life activities: intermittent severe difficulties chewing, swallowing and, at times, speaking; sitting or standing for extended periods of time; periodic inability to move as a result of pain and exhaustion; and inability to read and comprehend materials, concentrating, and properly communicate.

25. In addition to documents confirming the above disabling conditions, the documents Plaintiff presented to Defendant UD in September 2016 included Plaintiff's prior undergraduate accommodations issued in 2015 by Eastern Kentucky University for the same conditions, and documentation issued in 2013 by the Department of Veterans Affairs confirming the conditions described above.

26. Defendant, acting through its authorized staff in the OLR, rejected Plaintiff's hand-delivered documents without reviewing them or any further inquiry into their contents and without any plausible explanation for rejecting consideration of those documents.

27. From the moment Plaintiff made his accommodations request to Defendant, Defendant had an affirmative duty to engage in an interactive process, including consideration of all the above described materials Plaintiff attempted to submit to Defendant in support of his request for accommodations. Nevertheless, Plaintiff was informed by the OLR that Defendant would conduct its own independent evaluation.

28. At all relevant times, Office of Learning Resources was acting for Defendant with full authority to render accommodation decisions on its behalf.

29. Defendant refused to consider any VA documentation or undergraduate accommodation documentation Plaintiff submitted to Defendant in September and advised that Defendant would have to conduct its own disabilities evaluation.

30. Plaintiff is not aware of, and was never informed, that Defendant actually conducted its own "independent evaluation." To Plaintiff's knowledge, Defendant's decision to provide accommodations to Plaintiff was based largely or entirely on medical documentation that was provided by Plaintiff and available to Defendant in early September of 2016.

31. On or about October 28, 2016, Plaintiff emailed OLR additional disabilities rating documents issued by the Department of Veterans Affairs, confirming his VA disability rating and the disabling conditions described above.

32. On or about November 1, 2016, Plaintiff was to attend an appointment with the OLR. Defendant cancelled this appointment due to sickness.

33. On or about November 16, 2016, Plaintiff met with authorized OLR staff and provided Disabilities Ratings documentation which both assigned Plaintiff a 50% disability rating, reaffirmed the disabling conditions described above, and discussed how his above described disabilities manifested.

34. Defendant again rejected Plaintiff's documentation and informed him that it needed "the most recent information."

35. At this time, Defendant knew or should have known that Plaintiff's disabling medical conditions were permanent and would not improve.  Plaintiff accordingly requested that Defendant email him the standards or guidelines that Defendant was using in determining whether it would provide the requested accommodations.

36. By delaying its decision and obstructing Plaintiff's efforts to provide relevant medical information as described above, Defendant breached its duty to engage in an interactive process to provide Plaintiff reasonable accommodation that would afford him access to educational benefits equal to those enjoyed by non-disabled students.

37. On the afternoon of November 16, 2016, Defendant emailed Plaintiff stating that the University of Dayton School of Law follows the "MPRE Documentation Guidelines" to determine disability eligibility and provided him a link to that site.  Plaintiff had not been previously informed of those standards.

38. In fact, the documentation described above that was already offered to Defendant met the MPRE Documentation Guidelines.

39. On or about November 21, 2016, Plaintiff sent Brenda Cooper a copy of Disabilities Ratings documentation which assigned Plaintiff a 70% disability rating. This confirmed most of the conditions described above and was included in the information Plaintiff previously offered to Defendant, but was refused by it for the ostensible reason that Defendant was conducting its own evaluation.

40. Finally, on November 23, 2016, the day before Thanksgiving, the OLR determined that Plaintiff was eligible for academic accommodations, but they would not be granted until Spring, 2017.

41. For two months or longer, Defendant had access to, yet refused adequate documentation that had been offered by Plaintiff. The documentation triggered their affirmative duty to engage in the interactive process, yet Defendant intentionally delayed doing so.

42. For two months or longer, Defendant intentionally hindered Plaintiff's ability to receive accommodations for both his home study, classwork, and his final exams by rejecting his proffered documentation and requesting repetitive and cumulative documentation and otherwise delaying and obstructing the processing of his accommodation requests.

43. To Plaintiff's knowledge, there was no webpage regarding accommodations requests specific to the School of Law.

44. Defendant had ample time to grant Plaintiff's accommodations relating to his home study, classwork, and his test taking during his first semester, yet chose not to do so.

45. Defendant's email of November 23, 2016, granting accommodations stated Plaintiff's "next step" was "to meet with School of Law Shannon Penn, Assistant Dean of Student

8

Affairs and Registrar" in order "to determine how accommodations will be addressed in each class / each semester."

46. Three days later, the Sunday of Plaintiff's Thanksgiving Break, he emailed Dean Shannon Penn, pursuant to the email instructions. Plaintiff stated, "I would like to meet at your earliest convenience to complete the accommodations request." Plaintiff did not receive a response.

47. In fact, Plaintiff went to Dean Penn's office shortly after the Thanksgiving break to meet with her to discuss his accommodations. Penn declined to meet with Plaintiff, stating that his accommodations would not go into effect until the next semester.

48. At all relevant times, Dean Shannon Penn was acting for and on behalf of Defendant with respect to Defendant's efforts to obtain accommodations that would make it possible for him to enjoy academic benefits offered by Defendant equal to those offered non-disabled students.

49. After completing his first semester of law school and finals without any of the accommodations he had requested and that had ultimately been approved by Defendant, Plaintiff performed well below the GPA required by Defendant.

50. Plaintiff nonetheless returned for the Spring 2017 semester.

51. On January 16, 2016, Plaintiff spoke to Dean Shannon Penn to check in on the previously requested accommodations meeting. Dean Shannon Penn told Plaintiff to "do nothing," as she had already been planning to schedule a meeting with Plaintiff.

52. The next day, Plaintiff received an email from OLR. The email was also sent to Dean Shannon Penn.

9

53. The email stated that Plaintiff "did not follow up with the mandatory appointment to discuss appropriate accommodations" or "draft and sign the required forms for the Law School in consideration for SP17" with Brenda Cooper.

54. At no point was Plaintiff made aware of a "mandatory meeting" with Brenda Cooper. Instead, Plaintiff followed instructions given him in the email of November 23, 2016, described above, and emailed Dean Shannon Penn to initiate the process.

55. On January 24, 2017, Dean Shannon Penn emailed Plaintiff to set up a meeting regarding his accommodations request.

56. Just over three hours later, Dean Shannon Penn again emailed Plaintiff. The email stated, "I spoke with Ms. Cooper in the Office of Learning Resources and, it has come to my attention that you have not completed the procedures for obtaining accommodations. I will meet with you regarding your accommodations once you complete the process with Ms. Cooper."

57. Plaintiff replied, citing the email of November 23, 2016, which clearly stated his next step was to contact and meet with Dean Shannon Penn, not Brenda Cooper, and with which he had fully complied.

58. Thus, Defendant continued to discourage Plaintiff's ongoing efforts to seek reasonable accommodations and thereby continued to violate its duty to provide Plaintiff reasonable accommodation so that he could enjoy the same academic benefits Defendant offered to its non-disabled students.

59. By February 2, 2017, Plaintiff received his requested accommodations, including extended time for assignments and test taking, as well as assistive software that allowed him to complete assignments, use the computer, and take tests without the pain and concentration

10

problems he experienced without the software. These are essentially, the same accommodations Plaintiff requested on August 22, 2016 and essentially the same accommodations he received while at Eastern Kentucky University.

60. With those accommodations, Plaintiff was now better able to maintain concentration, read materials, submit assignments, and be overall more prepared for classes. That is, he was now able to function on the same footing as non-disabled students and obtain the same educational benefits as the non-disabled students.

61. Because the Plaintiff's fall semester was completed without a single accommodation, it was not until sometime after February 2, 2017, that Plaintiff was finally offered a fair opportunity to begin to enjoy the same academic benefits as non-disabled students were offered by Defendant, adjust to law school, and utilize appropriate study skills on the same level as his non-disabled peers.

62. With accommodations, Plaintiff's Spring 2017 semester grades improved.

63. Because Defendant failed to offer Plaintiff any reasonable accommodations for his entire first semester and part of his second semester, as described above, Defendant knew Plaintiff now faced the insurmountable task of raising his GPA almost an entire grade point in a single semester.

64. Plaintiff would have needed to perform well above an average level to raise his cumulative GPA to the requisite standard.

65. Plaintiff, facing not only added anxiety and stress caused by Defendant's pressure, but also typical law school stress, fell short of the requisite cumulative GPA for the year.

66. On or around May 26, 2017, Dean Shannon Penn notified Plaintiff that he was academically dismissed.

67. Plaintiff then met with Dean Shaw, Associate Dean for Academic Affairs, who told him an appeal could be entered with a deadline of June 26, 2017.

68. On June 5, 2017, Plaintiff emailed Dean Shaw for assistance with the appeals process. Plaintiff received no response.

69. On June 22, 2017, Plaintiff emailed Dean Shannon Penn regarding the appeals policy and assistance in locating the policy online. Dean Penn replied that it was "too late" because the deadline was in fact June 16, 2017.

70. Defendant continuously and intentionally delayed and otherwise obstructed processing of Plaintiff's accommodations request in the manner described above.

71. Defendant's intentional failure to comply with their affirmative duty to engage in the interactive process, coupled with seeking unnecessary, duplicative documentation in order to delay Plaintiff's request, has denied Plaintiff a fair opportunity to enjoy academic benefits offered by Defendant to its non-disabled students, solely because of Plaintiff's disabilities and persistent efforts to pursue his rights under state and federal civil rights laws.

72. By Defendant's actions, Plaintiff was denied the opportunity to study, complete assignments, and take exams because of the periodic, substantial physical pain and stress caused by his medical conditions while trying to perform those essential tasks.

73. Defendant's actions described above were taken against Plaintiff because of his persistent efforts to assert his rights to reasonable accommodations as afforded by both state and federal law.

74. As a direct and proximate result of Defendant's conduct as described above, Plaintiff has been deprived of a law degree, delayed, has a diminished and/or deprived ability to earn

income commensurate with Defendant's other non-disabled students, and caused him severe emotional and physical pain and suffering and other injuries, all in an amount to be determined by the evidence at trial.

## COUNT I

### (Rehabilitation Act – 29 USC § 794)

75. Plaintiff incorporates all factual allegations set out above.

76. Plaintiff is a qualified individual with a disability, is perceived as disabled, and/or has a record of a disability as defined under the Rehabilitation Act.

77. Defendant's acts as described above in discriminating and retaliating against Plaintiff solely because of his disability both perceived and real, include, and denying him reasonable academic accommodation in the manner described above, operated to deny Plaintiff educational benefits equal to non-disabled students in violation of Plaintiff's rights as protected by the Rehabilitation Act.

78. Defendant's acts were willful, wanton, and in reckless disregard of Plaintiff's rights.

79. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has been injured in the manner described above all to his damage in an amount to be determined by the evidence at trial.

## COUNT II

### (ADA – Disability Discrimination)

80. Plaintiff incorporates all factual allegations set out above.

81. Plaintiff is a qualified individual with a disability, is perceived as disabled, and/or has a record of a disability as defined under the ADA.

13

82. Plaintiff could perform the essential functions of his role as a law student with reasonable accommodations.

83. Defendant's acts as described above in discriminating against Plaintiff solely because of his disability both perceived and real, and denying him reasonable academic accommodation in the manner described above, operated to deny Plaintiff educational benefits equal to non-disabled students in violation of Plaintiff's rights as protected by the Title III of the American with Disabilities Act.

84. Defendant's acts were willful, wanton, and in reckless disregard of Plaintiff's rights.

85. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has been injured in the manner described above all to his damage in an amount to be determined by the evidence at trial.

## COUNT III

### (ADA – Failure to Accommodate/Retaliation)

86. Plaintiff incorporates all factual allegations set out above.

87. Plaintiff lawfully requested reasonable accommodations for his disability from Defendant.

88. Defendant denied Plaintiff's numerous requests for reasonable accommodations.

89. Defendant retaliated against Plaintiff for requesting and/or availing himself of reasonable accommodations.

90. Defendant's acts in retaliating against Plaintiff because he asserted rights under the ADA include, but are not limited to, refusing to timely engage in the interactive process, requesting duplicative and cumulative documentation, refusing to grant classroom and testing accommodations for Plaintiff's fall semester, and otherwise engaging in the conduct described above, in violation of the ADA.

91. Defendant's acts were willful, wanton, and in reckless disregard of Plaintiff's rights.

92. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has been injured in the manner described above all to his damage in an amount to be determined by the evidence at trial.

## COUNT IV

### (R.C. Chapter 4112.02 – Disability Discrimination)

93. Plaintiff incorporates all factual allegations set out above.

94. Plaintiff is a qualified individual with a disability, is perceived as disabled, and/or has a record of a disability as defined under Ohio law.

95. Plaintiff could perform the essential functions of his role as a law student with reasonable accommodations.

96. Defendant's acts as described above in discriminating against Plaintiff solely because of his disability both perceived and real, and denying him reasonable academic accommodation in the manner described above, operated to deny Plaintiff educational benefits equal to non-disabled students in violation of Plaintiff's rights as protected by Ohio Civil Rights Act, R.C. Chapter 4112.02, *et seq.*

97. Defendant's acts were willful, wanton, and in reckless disregard of Plaintiff's rights.

98. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has been injured in the manner described above all to his damage in an amount to be determined by the evidence at trial.

## COUNT V

### (R.C. Chapter 4112 – Failure to Accommodate/Retaliation)

99. Plaintiff incorporates all factual allegations set out above.

100. Plaintiff lawfully requested reasonable accommodations for his disability from Defendant.

101. Defendant denied Plaintiff's numerous requests for reasonable accommodations.

102. Defendant retaliated against Plaintiff for requesting and/or availing himself of reasonable accommodations.

103. Defendant's acts as described above in discriminating against Plaintiff solely because of his disability both perceived and real, and denying him reasonable academic accommodation in the manner described above, and otherwise retaliating against Plaintiff because he was asserting rights under Chapter 4112, operated to deny Plaintiff educational benefits equal to non-disabled students in violation of Plaintiff's rights as protected by Ohio Civil Rights Act, R.C. Chapter 4112.02, *et seq*.

104. Defendant's acts were willful, wanton, and in reckless disregard of Plaintiff's rights.

105. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has been injured in the manner described above all to his damage in an amount to be determined by the evidence at trial.

**WHEREFORE,** Plaintiff Troy D. Cox demands judgment against Defendant University of Dayton as follows:

(a) That Defendant be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff's fall 2016 records be expunged;

(c) That Plaintiff be reenrolled at University of Dayton College of Law;

(d) That Plaintiff be awarded compensatory damages, including but not limited to, the cost of one year of law school and all related expenses, loss of opportunity, the physical pain he endured through testing without accommodations, his emotional pain and suffering in the form of embarrassment, anger, and anxiety, as well as for reputational injury;

(e) That Plaintiff be entitled to preserve the appeal regarding his Civil Procedure II grade;

(f) That Plaintiff be awarded punitive damages;

(g) That Plaintiff be awarded pre-judgment interest;

(h) That Plaintiff be rewarded reasonable attorney's costs and fees; and

(i) That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

    Respectfully submitted,

/s/*Michael J. O'Hara*
MICHAEL J. O'HARA (OH Bar No. 0014966)
O'HARA, TAYLOR, SLOAN & CASSIDY
25 Town Center Boulevard, Suite 201
Covington, Kentucky  41017
mohara@oharataylor.com
(859) 331-2000
FAX: (859) 578-3365

**ATTORNEY FOR PLAINTIFF**

## JURY DEMAND

Pursuant to Federal Rule 38, Plaintiff herewith demands that all issues of fact in the foregoing Complaint be tried to a jury.

/s/*Michael J. O'Hara*
MICHAEL J. O'HARA
O'HARA, TAYLOR, SLOAN & CASSIDY

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties and counsel of record.

/s/*Michael J. O'Hara*
MICHAEL J. O'HARA